UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| WAYNE E. WEBB, ET AL. | CIVIL ACTION NO. 13-1121 |
| versus | JUDGE TOM STAGG |
| JEREMY L. JORDAN, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendant Jeremy L. Jordan ("Officer Jordan"), seeking judgment as a matter of law and dismissal of all of the claims asserted against him by plaintiffs Wayne E. Webb ("Wayne") and Judith A. Webb ("Judith")(collectively "the plaintiffs"). See Record Document 15. For the reasons set forth below, Officer Jordan's motion is **GRANTED.**

## I. BACKGROUND

Shortly after 2:00 a.m. on May 6, 2012, Judith was pulled over by defendant Officer Jordan, a Shreveport City Police Officer, allegedly for crossing the center line of the roadway. See Record Document 1-4 at ¶ 4; Record Document 15, Statement of Undisputed Facts at ¶ 3. Prior to initiating the traffic stop, Officer Jordan activated his dashboard camera, which recorded the events immediately prior to the traffic stop and the events that followed. See Record Document 15, Statement of Undisputed

Facts at ¶ 2.[1] After speaking with Judith and suspecting she might be under the influence or impaired, Officer Jordan performed multiple field sobriety tests. See id., Statement of Undisputed Facts at ¶¶ 4-5, Ex. 2[2] at 02:05:15–02:13:20. After performing the first test, Officer Jordan advised Judith of her Miranda rights but informed her she was not under arrest. See id., Statement of Undisputed Facts at ¶ 5, Ex. 2 at 02:09:14–02:09:30. Officer Jordan alleges there were multiple indicators that Judith might be impaired. See id., Statement of Undisputed Facts at ¶ 5.

Officer Jordan walked to Judith's vehicle and briefly spoke with the passengers before a black SUV arrived on the scene and parked in front of Judith's vehicle. See id., Statement of Undisputed Facts at ¶ 6, Ex. 2 at 02:13:20-02:14:00. The passengers informed Officer Jordan that the person in the second vehicle was Judith's attorney. See id., Statement of Undisputed Facts at ¶ 6, Ex. 2 at 02:14:00-02:14:06; Record

---

[1] The plaintiffs do not contest this fact in their own Statement of Uncontested Facts. See Record Document 19, Statement of Uncontested Facts at ¶ 2. Therefore, for purposes of the instant motion, this fact is deemed admitted. See Local Rule 56.2. The video is attached as an exhibit to Officer Jordan's instant motion. See Record Document 15, Ex. 2.

[2] The court is entitled to rely on video evidence, notwithstanding its obligation to view evidence in a light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007); Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011). In particular, the court shall not rely on facts alleged by a party if those facts are clearly contradicted by video evidence. See Scott, 550 U.S. at 380, 127 S. Ct. at 1776; Carnaby, 636 F.3d at 187.

Document 19, Statement of Undisputed Facts at ¶6. Officer Jordan then directed Judith to have a seat in the back of his patrol car, without being handcuffed, and radioed for backup. See Record Document 15, Statement of Undisputed Facts at ¶ 6, Ex. 2 at 02:14:06–02:14:35; Record Document 19, Statement of Undisputed Facts at ¶ 6. Officer Jordan then spoke to the driver of the black SUV, Wayne, who identified himself as Judith's husband. Wayne asked if Judith was being arrested, and Officer Jordan told him that she was not. Officer Jordan then explained to Wayne that Judith crossed over the yellow line and was showing signs of impairment. See Record Document 15, Statement of Undisputed Facts at ¶ 7, Ex. 2 at 02:14:35–02:15:01; Record Document 19, Statement of Undisputed Facts at ¶ 7.

The plaintiffs allege in their complaint that Officer Jordan told Wayne and Judith that Judith could not drive her vehicle home, they were forced to leave the vehicle behind, and Wayne drove Judith and the other passengers in her car home. See Record Document 1-4 at ¶¶ 7-8. Officer Jordan contends that he was not comfortable with Judith driving and asked Wayne if he could drive Judith home and come back for her car later, which Wayne agreed to, and that he never ordered Wayne to do anything, did not seize Judith's vehicle, and did not order them to leave it behind. See Record Document 15, Statement of Undisputed Facts at ¶¶ 8-10. On the video, Officer Jordan tells Wayne "I don't feel comfortable with her driving, okay.

3

Is there a way that you could take her home and y'all could come pick up the car later?", to which Wayne responded "Yes." See id., Ex. 2 at 02:15:26–02:15:32. After further discussion with Wayne, Officer Jordan states "All I'm asking, and I'm not going to [unintelligible], all I want is somebody to take her home . . . ." See id., Ex. 2 at 02:16:30–02:16:34.

As Wayne was moving Judith's car, Officer Jordan spoke to Judith, who was still sitting in the back of his patrol car, and told her that Wayne was going to take her home because Officer Jordan was not comfortable with her driving. See id., Statement of Uncontested Facts at ¶ 11, Ex. 2 at 02:17:25–02:17:40. Judith was issued a citation for improper lane usage. See id., Statement of Uncontested Facts at 11. Officer Jordan told Judith that part of the reason he was issuing her a citation was because she had been "very uncooperative." See id., Ex. 2 at 02:21:30-02:22:10. The traffic stop lasted approximately sixteen minutes,[3] and Judith was sitting in the backseat of Officer Jordan's patrol car, not handcuffed, for approximately seven of those minutes. See id., Ex. 2 at 02:14:35–02:21:16. The plaintiffs allege that the traffic citation was ultimately dismissed by the city prosecutor's office. See Record

---

[3] The parties agree that the traffic stop lasted sixteen minutes. See Record Document 15, Statement of Uncontested Facts at ¶ 11; Record Document 19, Statement of Uncontested Facts at ¶ 11. The duration of the video, which includes Officer Jordan following Judith's car prior to initiating the traffic stop, is approximately eighteen minutes. See Record Document 15, Ex. 2.

Document 1-4 at ¶ 7.

The plaintiffs filed suit against the City of Shreveport ("the City") and Officer Jordan in state court on May 6, 2013, alleging causes of action for deprivation of Judith's constitutional rights in violation of 42 U.S.C. § 1983, false imprisonment, and taking of property without due process. See Record Document 1-4 at ¶¶ 12-14. The City and Officer Jordan removed the case to this court and filed a motion to dismiss on the ground that the plaintiffs' complaint failed to state a claim upon which relief could be granted. See Record Documents 1 and 4. This court granted the motion as to the City because the plaintiffs' complaint against the City was strictly based on respondeat superior for the actions of Officer Jordan, and failed to allege an official policy or custom of the City was a cause of the alleged damages. The motion to dismiss was denied as to Officer Jordan, finding the plaintiffs had pled sufficient facts to overcome their initial burden. See Record Document 11. Officer Jordan filed the instant motion for summary judgment, seeking judgment as a matter of law and dismissal of the plaintiffs' claims on the grounds that he is entitled to qualified immunity, the traffic stop was reasonable under the circumstances, and there was no taking of the plaintiffs' vehicle. See Record Document 15. The plaintiffs filed a five-page opposition, with three paragraphs of argument, essentially arguing only that there was no reasonable basis for Officer Jordan to initiate the traffic stop. See

Record Document 19. Officer Jordan filed a reply brief. See Record Document 20.

## II. LAW AND ANALYSIS

A.   **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a

motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

Although the court must ordinarily view the evidence in the light most favorable to the nonmovant, the court can "assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." See Carnaby, 636 F.3d at 187. If the facts alleged by a party are clearly contradicted by video evidence, the court should not rely on those facts and should instead view the facts "in the light depicted by the videotape." See Scott, 550 U.S. at 380, 127 S. Ct. at 1776.

**B.   Section 1983 Claims And Qualified Immunity.**

To state a claim under section 1983 against Officer Jordan, the plaintiffs must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. See Lefall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir.1994). Officer Jordan argues that he is entitled to qualified immunity. Qualified immunity shields government officials from liability in their performance of discretionary functions, unless their conduct violated a clearly established constitutional right. See Ontiveros v. City of Rosenberg, Tex., 564 F.3d 379, 382 (5th Cir. 2009). "Once raised, a plaintiff has the burden to rebut the qualified

immunity defense . . . . We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 380 (5th Cir. 2005).

The qualified immunity defense presents a two-part inquiry: "(1) whether the facts alleged or shown by the plaintiff made out a violation of a constitutional right, and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct." Ontiveros, 564 F.3d at 382. The court may address either part of the two-part inquiry first. See Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808 (2009). The alleged violations of the plaintiffs' constitutional rights are that Officer Jordan executed a traffic stop without reasonable grounds for doing so, unlawfully detained Judith when he placed her in the back of his patrol car, and took the plaintiffs' property—the vehicle Judith was driving. The court shall address these alleged violations in turn.

1. **The Traffic Stop.**

The Fourth Amendment guarantees persons the right to be free from unreasonable searches and seizures. See U.S. Const. Amend. IV. A traffic stop is a seizure within the meaning of the Fourth Amendment. See Delaware v. Prouse, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396 (1979). A law enforcement officer may stop and

briefly detain a person if the officer has a reasonable suspicion that criminal activity has occurred, even if probable cause is lacking. See Terry v. Ohio, 392 U.S. 1, 20-22, 88 S. Ct. 1868, 1879-80 (1968). The Court's analysis in Terry provides the framework for evaluating the reasonableness of traffic stops. See United States v. Esquivel, -- F. App'x --, 2014 WL 3362144 at *1 (5th Cir. July 10, 2014); United States v. Jaquez, 421 F.3d 338, 340 (5th Cir. 2005).

Officer Jordan alleges that he observed Judith's vehicle cross the center line on several occasions, a violation of Louisiana Revised Statutes section 32:79(1).[4] See Record Document 15, Memorandum In Support and Ex. 1 at ¶ 2. Additionally, based on his training and experience, Officer Jordan believed that crossing the center line might indicate that Judith was intoxicated. See id. The plaintiffs contend that "the video does not show that the vehicle crossed the centerline" and also that "the video does not show any driving that was a violation of any improper lane usage." Record Document 19 at 2. Despite the plaintiffs' assertions, the video shows that Judith's vehicle briefly crosses over the center line just prior to Officer Jordan initiating the traffic stop. See Record Document 15, Ex. 2 at 02:04:48–02:04:53. As the court noted earlier, when one party's alleged facts are clearly contradicted by video

---

[4] "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." La. R.S. § 32:79(1).

9

evidence, there is no genuine dispute of material fact. See Scott, 550 U.S. at 380, 127 S. Ct. at 1776; Carnaby, 636 F.3d at 187

The court finds there is no genuine dispute of material fact that Officer Jordan had a reasonable basis for initiating the traffic stop. Moreover, the traffic stop was reasonably limited in both scope and duration. Officer Jordan conducted three field sobriety tests because he was concerned that Judith might be intoxicated, interviewed Judith and the vehicle's occupants to ascertain the facts, and ultimately issued her a citation and released her. The entire traffic stop lasted sixteen minutes, several of which Officer Jordan was talking with Wayne, who unexpectedly showed up on the scene. The court finds there was no violation of Judith's constitutional rights in Officer Jordan initiating and conducting the traffic stop.

2. **Detaining Judith In The Patrol Car.**

During the course of the traffic stop, Officer Jordan placed Judith in the backseat of his patrol car, without handcuffs or any restraints, for approximately seven minutes. Officer Jordan's reason for doing so was that Wayne arrived in a second vehicle while he was attempting to speak to the passengers in Judith's vehicle. Additionally, he radioed for backup. In his affidavit, Officer Jordan states that he took these actions because the arrival of another vehicle posed a safety risk and he wanted to be able to safely evaluate the situation. See Record Document 15, Ex. 1

at ¶ 7.

Although the plaintiffs pled in their complaint that placing Judith in the patrol car violated her constitutional rights, they did not make any arguments as to this point in their opposition to Officer Jordan's motion. See Record Document 19. "[A]n issue raised in the complaint but ignored at summary judgment may be deemed waived." See Keenan v. Tejeda, 290 F.3d 252, 262 (5th Cir. 2002); G&H Dev., LLC v. Penwell, No. 13-0272, 2014 WL 1248241 at *4 (W.D. La. Mar. 26, 2014). Therefore, the court finds that Officer Jordan is entitled to judgment as a matter of law that his detainment of Judith in his patrol car did not violate her constitutional rights.[5]

### 3. Alleged Taking Of The Plaintiffs' Vehicle.

The final issue raised in the plaintiffs' complaint is that Officer Jordan committed a taking of their property without due process when he "informed" them that Judith "could not drive her vehicle home." Record Document 1-4 at ¶ 7.[6] As with the issue of Judith's detainment in Officer Jordan's patrol car, the plaintiffs did

---

[5] Even if this argument was not waived, the court finds that it was reasonable for Officer Jordan to place Judith in the back of his patrol car, without restraints, to address the safety concern of an unknown vehicle arriving at the scene while he had no backup.

[6] Additionally, the plaintiffs allege in their complaint that Officer Jordan directed that Judith "was not permitted to drive home" and "instructed" Judith "to not drive her vehicle." Record Document 1-4 at ¶¶ 12, 14.

11

not make any arguments as to this issue in their opposition to the instant motion. See Record Document 19. Thus, this argument can be considered waived. See <u>Keenan</u>, 290 F.3d at 262; <u>Penwell</u>, 2014 WL 1248241 at *4.

Moreover, there was no violation of the plaintiffs' property rights because there was no state action. The first mention of Judith not driving her vehicle was when Officer Jordan told Wayne "I don't feel comfortable with her driving, okay. Is there a way that you could take her home and y'all could come pick up the car later?", to which Wayne responded "Yes." <u>See</u> Record Document 15, Ex. 2 at 02:15:26–02:15:32. At this point, Wayne had voluntarily agreed to drive Judith home and leave her car on the scene. Thus, even if some later statement by Officer Jordan could be interpreted as ordering Judith to not drive her car home, there was no state action because Wayne voluntarily agreed to that plan with Officer Jordan. Therefore, the court finds that Officer Jordan is entitled to judgment as a matter of law that there was no violation of the plaintiffs' property rights in the vehicle that Judith was driving when she was pulled over.

### III. CONCLUSION

For the reasons stated above, Officer Jordan's motion is **GRANTED** and all of the plaintiffs' claims against him are **DISMISSED WITH PREJUDICE.**

A judgment consistent with the terms of this Memorandum Ruling shall issue

herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 27th day of August, 2014.

_____
JUDGE TOM STAGG